UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICOLE ARMBRUSTER,<br>519 Fern Pl., NW<br>Washington, DC 20012,<br><br>      PLAINTIFF<br>  vs.<br><br>DISTRICT OF COLUMBIA,<br>1350 Pennsylvania Ave., NW<br>Suite 316<br>Washington, DC 20004,<br><br>OFC. ERIC FROST (#4005),<br>*in his individual capacity*,<br>Metropolitan Police Department<br>Fourth District<br>6001 Georgia Ave., NW<br>Washington, DC 20011,<br><br>      DEFENDANTS | )<br>)<br>) Judge _____<br>) Civil Action No. _____<br>)<br>)<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

THE PARTIES

    1.    Plaintiff Nicole Armbruster is a citizen of the District of Columbia.  Ms. Armbruster is 5'4" and on April 21, 2012 weighed approximately 120 pounds.

    2.    Defendant District of Columbia is a municipal corporation.  The Metropolitan Police Department (MPD) is an agency of Defendant District of Columbia.

    3.    Defendant Officer Eric Frost is and was, at all times relevant to this Complaint, an MPD officer.  Officer Frost is being sued in his individual capacity.  At all times relevant to this Complaint, Officer Frost was acting under color of District law

1

within the scope of his employment with the District of Columbia. Officer Frost is approximately 5'9" and on April 21, 2012 weighed approximately 160 pounds.

## JURISDICTION AND VENUE

4. This action arises under 42 USC § 1983 and the District of Columbia common law.

5. This Court has jurisdiction over the parties and subject matter pursuant to 28 USC § 1331 and § 1367(a).

6. Venue is proper in this district pursuant to 28 USC § 1391(b)(2) because the events or omissions giving rise to this action occurred in the District of Columbia.

## STATEMENT OF FACTS

7. On April 21, 2012, Ms. Armbruster was participating in a protest against the World Bank and International Monetary Fund. On that day, at approximately 8:40 a.m., Ms. Armbruster and several other protesters were walking north in the 800 block of 19th St., NW after having concluded demonstrations at the headquarters of the World Bank and International Monetary Fund.

8. Ms. Armbruster observed that another protester, Ms. Nancy Munoz Wolfson, had stopped walking and was standing in the street. Ms. Armbruster approached Ms. Munoz Wolfson, said "Come on, let's go," and reached for her hand.

9. At that point, approximately seven MPD officers surrounded the two women and pulled the two women apart.

10. Officer Frost grabbed Ms. Armbruster and, assisted by several other MPD officers, pulled her over to the side of a car.

11. Officer Frost, without warning, then slammed Ms. Armbruster's face into the hood of the car.

12. At the time Officer Frost slammed Ms. Armbruster's face into the hood of the car, Ms. Armbruster was already securely within Officer Frost's grasp.

13. At the time Officer Frost slammed Ms. Armbruster's face into the hood of the car, Ms. Armbruster was not resisting.

14. At the time Officer Frost slammed Ms. Armbruster's face into the hood of the car, Ms. Armbruster was neither escaping nor attempting to escape.

15. At the time Officer Frost slammed Ms. Armbruster's face into the hood of the car, Ms. Armbruster posed no threat to property or anyone's safety.

16. At the time Officer Frost slammed Ms. Armbruster's face into the hood of the car, Ms. Armbruster was neither touching nor attempting to touch any of the officers who were present.

17. The amount of force used by Officer Frost in slamming Mr. Armbruster's face into the hood of the car was excessive: Officer Frost is much larger and stronger than Ms. Armbruster; there were numerous other police officers present; Ms. Armbruster was not committing any violent crime or harming anyone or anything; Officer Frost did not seek to use verbal persuasion before resorting to physical force; Ms. Armbruster was clearly unarmed; there were no weapons nearby; Ms. Armbruster did not appear to be under the influence of any drugs or alcohol; Ms. Armbruster made no aggressive gestures or words and was not in a fighting stance; Officer Frost is a very experienced police officer; and the amount of force used by Officer Frost posed a substantial danger of serious injury to Ms. Armbruster.


18. After Ms. Armbruster had been bent over the hood of the car for approximately ten second, not moving, Officer Frost, without warning, assisted by one or more other officers, threw Ms. Armbruster to the ground, causing cuts and bruises to her face and bruises to her knee.

19. Once Ms. Armbruster was on the ground, Officer Frost placed his knee on Ms. Armbruster's torso and leaned into her, causing Ms. Armbruster to be unable to breathe and also causing her severe pain.

20. At the time Officer Frost threw Ms. Armbruster to the ground and put his knee on her torso, Ms. Armbruster was already securely within Officer Frost's grasp.

21. At the time Officer Frost threw Ms. Armbruster to the ground and put his knee on her torso, Ms. Armbruster was not resisting.

22. At the time Officer Frost threw Ms. Armbruster to the ground and put his knee on her torso, Ms. Armbruster was neither escaping nor attempting to escape.

23. At the time Officer Frost threw Ms. Armbruster to the ground and put his knee on her torso, Ms. Armbruster posed no threat to property or anyone's safety.

24. At the time Officer Frost threw Ms. Armbruster to the ground and put his knee on her torso, Ms. Armbruster was neither touching nor attempting to touch any of the other officers who were present.

25. The amount of force used by Officer Frost in throwing Ms. Armbruster to the ground and putting his knee on her torso was excessive: Officer Frost is much larger and stronger than Ms. Armbruster; there were numerous other police officers present; Ms. Armbruster was not committing any violent crime or harming anyone or anything; Officer Frost did not seek to use verbal persuasion before resorting to physical force; Ms.

Armbruster was clearly unarmed; there were no weapons nearby; Ms. Armbruster did not appear to be under the influence of any drugs or alcohol; Ms. Armbruster made no aggressive gestures or words and was not in a fighting stance; Officer Frost is a very experienced police officer; and the amount of force used by Officer Frost posed a substantial danger of serious injury to Ms. Armbruster.

26. Officer Frost's actions were not necessary to restrain Ms. Armbruster and Officer Frost did not make appropriate efforts to avoid impeding Ms. Armbruster's ability to breathe.

27. As a result of Officer Frost's actions, Ms. Armbruster suffered pain, physical injury, and emotional and other injuries.

28. Ms. Armbruster went to Sibley Memorial Hospital due to the pain and injuries she suffered as a result of Officer Frost's use of force against her.

29. Ms. Armbruster was particularly vulnerable to pain in her pelvis/abdominal area as a result of recent surgeries.

30. During the encounter between the officers and Ms. Armbruster, Ms. Munoz Wolfson repeatedly told Officer Frost and other officers that Ms. Armbruster was sick and they were treating her too roughly.

31. Officer Frost arrested Ms. Armbruster.

32. On April 21, 2012, Ms. Armbruster was charged by the United States Attorney's Office with a violation of D.C. Code § 22-405(b). The charge was subsequently dismissed pursuant to a Deferred Prosecution Agreement.

33. The appropriate and required notice of Plaintiff's intent to sue the District was made by hand-delivering a copy of Plaintiff's claims to the Mayor's designee, the Office of Risk Management, on September 21, 2012.

<div align="center">

COUNT I:
ASSAULT AND BATTERY
(Officer Frost, District of Columbia)

</div>

34. This Count realleges and incorporates by reference paragraphs 1-33.

35. Officer Frost did intentionally and unlawfully attempt to physically harm Ms. Armbruster by slamming her face into the hood of a car, causing a harmful or offensive bodily contact to Ms. Armbruster.

36. Officer Frost did intentionally and unlawfully throw Ms. Armbruster to the ground and force his knee into her torso, causing a harmful or offensive bodily contact to Ms. Armbruster.

37. Officer Frost's actions were not reasonably necessary.

38. As a result of Officer Frost's actions, Ms. Armbruster suffered damages, including mental anguish, pain, physical injuries, and medical costs.

39. The District of Columbia is liable for Officer Frost's assault and battery of Ms. Armbruster under the doctrine of respondeat superior because Officer Frost was acting within the scope of his duties as an officer for the MPD.

<div align="center">

COUNT II:
FOURTH AMENDMENT (42 U.S.C. § 1983)
(Officer Frost)

</div>

40. This Count realleges and incorporates by reference paragraphs 1-32 and 35-38.

41. Officer Frost used excessive force in effecting the arrest of Ms. Armbruster by slamming her face into the hood of a car.

42. No reasonable officer under the circumstances would have used the amount of force that was used by Officer Frost against Ms. Armbruster.

43. Officer Frost used excessive force in effecting the arrest of Ms. Armbruster by throwing her to the ground and forcing his knee into her torso.

44. No reasonable officer under the circumstances would have used the amount of force that was used by Officer Frost against Ms. Armbruster.

<div style="text-align:center">

COUNT III:
FIFTH AMENDMENT (42 U.S.C. § 1983)
(Officer Frost)

</div>

45. This Count realleges and incorporates by reference paragraphs 1-32, 35-38, and 41-44.

46. If some or all of Ms. Armbruster's injuries are not cognizable under the Fourth Amendment because her arrest had ended and her pretrial detention had begun at the time that Officer Frost used excessive force against her, Ms. Armbruster's claims are alternatively cognizable under the Fifth Amendment.

47. Officer Frost violated Ms. Armbruster's substantive due process rights by slamming her face into the hood of a car, an arbitrary action unrelated to any legitimate governmental interest, and an action which shocks the conscience.

48. Officer Frost violated Ms. Armbruster's substantive due process rights by throwing her to the ground and forcing his knee into her torso, arbitrary actions unrelated to any legitimate governmental interest, and actions which shock the conscience.

## JURY TRIAL DEMANDED

Plaintiff demands a jury on all issues which may be properly tried by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare Defendants' conduct to be unlawful;

(2) Award Plaintiff compensatory and punitive damages in an amount to be determined at trial;

(3) Grant Plaintiff an award of attorney fees and other litigation costs reasonably incurred in this action;

(4) Grant Plaintiff such other and further relief which the Court deems proper.

Respectfully Submitted,

  /s/ Jeffrey Light

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213

*Counsel for Plaintiff*